THE MARY ADELAIDE RANDALL.

(Circuit Court of Appeals, Second Circuit. December 7, 1899.)

No. 58.

SHIPPING—CONSTRUCTION OF TIME CHARTER—TIME FOR DISCHARGING CARGO.

A charter party for as many voyages between given ports as can be made between the date of the charter and a future date, and which contains stipulations for lay days in loading and discharging, for customary dispatch, and for the payment of wharfage by the charterer, is a time contract for as many voyages as can be performed within the time specified, including the necessary detention upon each voyage for loading and discharging cargo; and the vessel is not bound to enter upon a voyage which it is reasonably certain cannot be completed and the cargo discharged before the expiration of the charter limit.

Appeal from the District Court of the United States for the District of Connecticut.

For opinion in district court, see 93 Fed. 222.

Chas. C. Burlingham, for appellants.
Samuel Park, for appellee.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

WALLACE, Circuit Judge. The charter party, for a breach of which the action was brought, by its terms entitled the charterer to the use of the vessel "for as many voyages as the vessel can make from Fernandina, Florida, to New York between the date of this charter [November 8, 1897] and June 30, 1898." The vessel had com-

pleted four round voyages, and was in readiness May 18, 1898, to commence another; and the alleged breach was the refusal of the master to make another round voyage. The defense was that the vessel could not make another voyage and discharge her cargo within the charter period. The average time of the previous voyages ($28\frac{1}{2}$ days), including discharge ($15\frac{1}{4}$ days), was $43\frac{3}{4}$ days; and the proofs justify the conclusion that the vessel could not have completed another voyage, if, within the meaning of the contract, the voyage includes the discharge as well as the trip from port to port.

We agree with the court below that the charter party was a time contract, and that its meaning was to charter the vessel for as many voyages as could be performed within the time specified, including the necessary detention upon each voyage for loading and unloading. If this was not the intention, the parties would have stipulated for a specified number of voyages. They undoubtedly took into consideration the number of voyages that the vessel could probably complete between the date of the instrument and the ensuing 30th day of June, and this could not have been done without estimating the time to be consumed in loading and discharging.

The learned district judge points out in his opinion that the parties could not have used the term "voyage" in the strict sense, signifying the actual transit of the vessel from port to port, because the various stipulations of the contract providing for receiving merchandise on board during the voyage, for lay days in loading and discharging, for customary dispatch, and for the payment of wharfage by the charterers, indicate the contrary, and denote that the voyages meant are those in which receiving and discharging cargo and lying at the wharf are incidents. We concur in his observations.

The only adjudged case which seems to be in point is Poland v. Coal Co., 14 Blatchf. 519, Fed. Cas. No. 11,245. In that case the vessel was chartered "for a series of voyages," from and to certain ports, "from the 2nd day of May until the 1st day of November"; and the question was whether the charterer was bound to furnish her with a cargo in the latter part of October. The court (Chief Justice Waite), deciding that the charterer was not bound to furnish the cargo, said:

"The charter party being for 'a series of voyages,' the libelant could not be required to receive, or the respondent to furnish, a cargo under the charter, unless there was reasonable cause to believe that the voyage could be completed in the usual and ordinary way by November 1st. * * * After allowing the respondent such time as it was entitled to under the charter for loading the vessel, there was no reasonable probability that a voyage to Boston could be completed by November 1st."

The decree is affirmed, with costs.